THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WILLIAM W. WATSON, JR.; ROBERT WOODFORD, by and through his next friend, ANITA GEISTLINGER; HEIDI HALTER, by and through her next friend, HAYLEY ADAMS; CHARLES E. PAPST, JR., by and through his next friend NIDA MORRIS; AMAR JUSLEN, by and through his next friend, RAUL JUSLEN; MAE SWEENEY; and OREGON ADVOCACY CENTER, Plaintiffs, v. BRUCE GOLDBERG, M.D., in his official capacity as Director, Oregon Department of Human Services; ALLEN DOUMA, in his official capacity as Assistant Director of the Division of Medical Assistance Programs; and JAMES TOEWS, in his official capacity as Assistant Director of Seniors and People with Disabilities, Defendants. | Civil No. 03-227-JE<br><br>FINDINGS AND RECOMMENDATION |

FINDINGS & RECOMMENDATION - 1

Beth Shara Englander
Legal Aid Services of Oregon
421 High Street, Suite 110
Oregon City, OR 97045

Spencer M. Neal
Oregon Law Center
921 S.W. Washington Street, Suite 516
Portland, OR 97205

Ellen Gradison
Oregon Law Center
1100 N.W. VanBuren
Corvallis, OR 97330

Emily J. Kaufmann
Leslie N. Kay
Legal Aid Service of Oregon
921 S.W. Washington Street, Suite 500
Portland, OR 97205

Eric M. Carlson
National Senior Citizens Law Center
3435 Wilshire Boulevard, Suite 2860
Los Angeles, CA 90010

Stephen R. Skipton
Lane County Legal Aid and Advocacy Center
376 East 11th Avenue
Eugene, OR 97401-3246

    Attorneys for Plaintiffs


Hardy Myers, Attorney General
Katherine G. Georges
Senior Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

    Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiffs William Watson, Jr., Robert Woodford, Heidi Halter, Charles Papst, Jr., Amar Juslen, Mae Sweeney, and the Oregon Advocacy Center bring this action pursuant to 42 U.S.C. § 1983 against Bruce Goldberg, Director of the Oregon Department of Human Services; Allen Douma, Assistant Director of the Division of Medical Assistance Programs; and James Toews, Assistant Director of the Seniors and Persons With Disabilities program.

Plaintiffs, who formerly received health care assistance through the Oregon Home and Community Based Services Waiver (HCBS waiver), challenge the State of Oregon's authority to reduce services provided to individuals under the HCBS waiver program. Plaintiffs' remaining claim in this action[1] alleges that defendants' termination of their eligibility for long term care violated the Medicaid Act, 42 U.S.C. § 1396 et seq.

Defendants move for summary judgment. The motion should be granted.

## PROCEDURAL BACKGROUND

Plaintiffs originally brought five claims seeking a declaration that defendants' termination of their eligibility for benefits under the HCBS waiver program violated the Medicaid Act, and an injunction requiring defendants to restore their eligibility for nursing home care and HCBS waiver services.

In a Findings and Recommendation filed on November 24, 2003, I recommended that defendants' motion to dismiss and motion for summary judgment be granted, and that plaintiffs' motion for summary judgment on the fifth claim be denied. That recommendation was adopted.

---

[1]As noted below, several of plaintiffs' claims have been dismissed.

Plaintiffs appealed the dismissal of their first three claims. The Ninth Circuit Court of Appeals affirmed the dismissal of the second and third claims. Watson v. Weeks, 436 F.3d 1152, 1157 (9th Cir. 2006). The Court of Appeals reversed the district court's decision as to the first claim, held that plaintiffs have a private right of action under § 1983 to enforce 42 U.S.C. § 1396a(a)(10), and remanded the action to this court for further proceedings. Id. at 1161-63.

**FACTUAL BACKGROUND**

This action arises from Oregon's participation in the Medicaid program, and from changes in the Oregon waiver program instituted in 2003 that reduced the number of individuals who are eligible for in home and community based care services.[2]

The Medicaid program is a cooperative federal-state Medical Assistance Program intended to enable states to furnish medical assistance to individuals who lack the resources to pay for needed medical services. 42 U.S.C. § 1396. States that participate in the Medicaid Program must develop a medical assistance plan that is approved by the federal Secretary of Health and Human Services (HHS). See id., 42 C.F.R. § 430.10. State medical plans are reviewed by the Federal Centers for Medicare and Medicaid Services (CMS), an agency within HHS. 42 C.F.R. § 430.10. To be approved by CMS, a state plan must comply with the requirements of the Medicaid Act and its implementing regulations. Wisconsin Dept. of Health

---

[2]A detailed summary of Oregon's participation in the Medicaid system and the changes it made to the HCBS waiver program giving rise to this action is set out in the Findings and Recommendation filed on November 24, 2003. Watson v. Weeks, CV 03-227 JE, slip op. (Dist. Or., Nov. 24, 2003). The Medicaid framework, Oregon's HCBS waiver program, and changes Oregon made eliminating coverage for some individuals in order to reduce state spending are also set out in Watson, 436 F.3d 1155, 1156-57.

FINDINGS & RECOMMENDATION - 4

and Human Servs. v. Blumer, 534 U.S. 473, 479 (2002). Participating states receive matching funds from the federal government. See 42 U.S.C. § 1396.

State medical assistance plans must provide for certain minimum medical services for all individuals who are financially eligible. See 42 U.S.C. § 1396a(a)(10)(A). These minimum services include "nursing facility services . . . for individuals 21 years of age or older." 42 U.S.C. § 1396d(a)(4)(A). A "nursing facility" is defined as an institution that is primarily engaged in providing skilled nursing care, rehabilitation, and health-related care that is available only in institutions. 42 U.S.C. § 1396d(c); 42 U.S.C. § 1396r(a)(1). "Nursing facility services" are defined as "services which are or were required to be given an individual who needs or needed on a daily basis nursing care . . . which as a practical matter can only be provided in a nursing facility on an inpatient basis." 42 U.S.C. § 1396d(f).

Medicaid pays for long term care of eligible elderly and disabled individuals provided in nursing homes. In addition, under the Home and Community Based Services (HCBS) waiver program, a state may provide "medical assistance" through home and community-based services to individuals who otherwise would need nursing facility care that is reimbursable under the state medical assistance plan. See 42 U.S.C. § 1396n(c)(1). States are not required to offer services under an HCBS waiver, but are allowed the option of providing care under an HCBS waiver as an alternative to providing care in nursing facilities. 42 U.S.C. § 1396a(a)(10)(A)(ii)(VI). If a waiver is approved, subsequent changes to the waiver program must be submitted to CMS for review and approval. 42 C.F.R. § 441.355. A state may terminate its waiver program at any time by giving notice of the termination to care recipients and CMS. See 42 C.F.R. § 441.307.

Oregon's application for an HCBS waiver was originally granted in 1981, allowing the state to provide in-home and community-based services to Medicaid recipients who would

otherwise need care in institutional nursing facilities. Oregon's system for determining eligibility for HCBS waiver services was also approved.

States use a variety of systems for determining whether an individual qualifies for care in a nursing home or through an HCBS waiver program. Under its "Client Assessment and Planning System," Oregon classifies individuals into eighteen service priority levels, based upon medical need. Service priority levels are determined by assessing an individual's "activities of daily living," or "ADLs."[3] Level one reflects the most significant need for care, and level eighteen reflects the least need for care.

From 1981 to 2003, Oregon provided care under an HCBS waiver to all Medicaid beneficiaries assessed at levels one through seventeen. Because of budget difficulties, in January, 2003, the Oregon Department of Human Services (ODHS) requested an amendment to its HCBS waiver program to eliminate care services to individuals in service levels fifteen to seventeen. Through CMS, the Secretary of HHS approved the request. In February, 2003, in order to further reduce costs, ODHS applied for a second HCBS modification that would eliminate services for individuals in levels ten through fourteen. That request was also granted. The Oregon legislature subsequently restored funding for service levels ten and eleven later in 2003, and restored service for levels ten through thirteen in the 2003-2005 budget. CMS has approved renewal of Oregon's HCBS waiver program, which now serves individuals in care levels one through thirteen, for an additional five year period which began on October 1, 2006.

---

[3]The same single set of criteria are applied, whether the services are to be provided in nursing facilities or in a community-based setting.

Plaintiffs formerly received care through the Oregon HCBS waiver program. They became ineligible to receive Medicaid-funded long term care services when, with CMS approval, Oregon changed eligibility rules to reduce the number of individuals receiving care under the waiver program.

It appears that, since the earlier Findings and Recommendation was issued, the status of several of the plaintiffs has changed. Because the pending motion for summary judgment presents what is essentially a legal question and the parties agree that at least one individual plaintiff has standing for purposes of the pending motion, I will not reach the question whether the other plaintiffs, including the Oregon Advocacy Center, have standing as well.

## PLAINTIFFS' CLAIM

In their remaining claim in this action, plaintiffs assert that defendants violated 42 U.S.C. §§ 1396a(a)(10) and 1396d(a)(4)(A) by terminating plaintiffs' eligibility for nursing facility care or home or community based waiver services because of budgetary deficits. Plaintiffs seek declaratory relief and an injunction reinstating their eligibility for the care for which they no longer qualify under Oregon's eligibility requirements.

## STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56©) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party

FINDINGS & RECOMMENDATION - 7

shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**DISCUSSION**

I. Standing

Defendants contend that most of the individual plaintiffs lack standing to pursue this action because they either are now receiving services following reassessment, or will remain ineligible for services regardless of the outcome of this action. For the purposes of evaluating the pending motion for summary judgment, however, defendants concede that plaintiff Sweeney has standing to seek declaratory and injunctive relief because she is currently assessed at a level that does not qualify for care. This is sufficient to allow the action to proceed. See, e.g., Chief Probation Officers v. Shalala, 118 F.3d 1327, 1331 (9th Cir. 1997).

II. Merits

With defendants' concession that one of the plaintiffs has standing, plaintiffs' remaining claim in this action presents a question of law: Do 42 U.S.C. §§ 1396a(a)(10) and

1396d(a)(4)(A) establish federal eligibility criteria which require all state Medicaid programs to provide nursing home care or community based waiver services to all Medicaid beneficiaries who need such services? Is eligibility a matter of federal law, or may states establish, and change, eligibility requirements?

Plaintiffs assert that, because nursing facility services are among the services states are required to provide to Medicaid beneficiaries, all state Medicaid programs must provide nursing facility services to every Medicaid beneficiary who "needs" such services.

Defendants disagree. They argue that the cited statutes "do not establish a federal *level of care* eligibility criteria that each state must apply to determine whether an individual qualifies for Medicaid funded nursing home or community based care." Def. reply mem. at 4 (emphasis in original). Instead, they assert that "each state establishes *its own* Medicaid eligibility standards, determines the type, amount, duration, and scope of services, sets the rate of payment for services, and administers its own program." Id. at 5 (emphasis in original). Defendants contend that the statutes upon which plaintiffs rely allow individual states to determine the minimum level of care criteria required to qualify for admission to a nursing facility or for alternative community-based waiver services under an HCBS waiver program. They assert that the federal definition of "nursing facility services" simply "establishes the type of nursing facility services – provided in an approved Medicaid facility, needed on a daily basis, and ordered under the direction of a physician – for which federal reimbursement is available *after* a person is admitted to a nursing facility." Def't's mem. in support of motion for sum. jud. at 18 (emphasis in original).

In evaluating these contentions, and determining whether states must provide nursing facility services to all Medicaid beneficiaries who "need" them, the court first must look to the

text of the relevant statutes.  E.g., Paul Revere Ins. Group. v. United States, 500 F.3d 957, 962 (9th Cir. 2007) (in interpreting statute, court first looks to "plain meaning" of its text).  The words in question must be read in their statutory context, "and with a view to their place in the overall statutory scheme."  FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (citation omitted).  In reviewing an agency's construction of a statute, courts first examine the text of the statute to determine whether Congress has directly addressed the issue in question.  Resident Councils of Washington v. Leavitt, 500 F.3d 1025, 1030 (9th Cir. 2007) (citing Contract Management, Inc. v. Rumsfeld, 434 F.3d 1145, 1146-47 (9th Cir. 2006) (per curiam)).  If the meaning of a statute is " 'plain and unambiguous,' " the statutory language is controlling.  Id. (quoting United States v. Maria-Gonzalez, 268 F.3d 664, 668 (9th Cir. 2001), cert. denied, 535 U.S. 965 (2002).  If a statute is "uncertain or ambiguous" as to the issue in question, reviewing courts defer to the "permissible construction" of an agency that is charged with its execution.  See id. (citations omitted).

      With these principles in mind, we turn to the relevant text of the statutes in question.  As noted above, these statutes require state Medicaid plans to provide certain "medical assistance" to "all individuals" who are eligible to receive "aid or assistance" under an approved state Medicaid plan.  42 U.S.C. § 1396a(a)(10)(A).  States must provide covered individuals "at least the care and services" specified in portions of § 1396d(a).  Id.  Under § 1396d(a)(4)(A), these services must include "nursing facility services (other than services in an institution for mental diseases) for individuals 21 years of age or older."  "Nursing facility services" are defined as "services which are or were required to be given an individual who needs or needed on a daily basis nursing care (provided directly by or under the supervision of nursing personnel) or other

rehabilitation services which as a practical matter can only be provided in a nursing facility on an inpatient basis." 42 U.S.C. § 1396d(f).

These statutes clearly require that each state's Medicaid plan include "nursing facility services" along with several other specified types of assistance. However, in the context of the joint state-federal program set out in the Medicaid Act, they cannot be reasonably construed as establishing federal eligibility standards which require states to uniformly provide such long-term care to <u>every</u> Medicaid beneficiary who "needs" it. The Medicaid Act instituted an assistance program in which the level of benefits and the eligibility standards for obtaining benefits vary from state to state. The opening sentence of the Medicaid Act specifically provides that the Medicaid program is funded "[f]or the purpose of enabling each State, <u>as far as practicable under the conditions in such State</u>, to furnish . . . medical assistance" to specified groups who lack the resources to purchase those services. 42 U.S.C. § 1396 (emphasis added).

This provision is significant: If the Medicaid Act imposed a uniform federal standard of "eligibility" for benefits, and Congress intended the medical assistance provided under the plan to be uniform in all states, the standards for determining eligibility and the extent of medical assistance to which every beneficiary was entitled would, logically, be set out by federal statute. They are not. Instead, under the Medicaid Act, states are responsible for including in their Medicaid plans "reasonable standards" for determining a beneficiary's "eligibility for and the extent of medical assistance under the plan . . . ." 42 U.S.C. § 1396a(a)17.

HHS and CMS, the federal agencies responsible for interpreting, enforcing, and administering the Medicaid program, do not construe the relevant Medicaid statutes as imposing a federal eligibility standard or requiring states to provide "nursing facility services" to <u>all</u> Medicaid beneficiaries who need that level of care. CMS, the agency within HHS that is

responsible for reviewing State Medicaid plans, interprets the Medicaid Act as allowing "each state [to] set[] its own guidelines regarding eligibility and services," and notes that eligibility for benefits varies from state to state. See http://www.cms.hhs.gov/Medicaid GenInfo. This interpretation is consistent with 42 C.F.R. § 430.0, which provide that "[w]ithin broad Federal rules, each State decides eligible groups, types and range of services, payment levels for services, and administrative and operating procedures." It is also consistent with 42 C.F.R. § 441.355, which provides that, with CMS approval, a state may amend its waiver program to change the eligible population, alter the services provided, or change the number of individuals who receive waiver services.

In its instructions for HCBS waiver applications, CMS specifically notes that states determine the "target groups" to be served through a waiver program, and that the states determine the maximum number of participants who will be served during each year that a waiver is in effect. See Application for a 1915(c) Home and Community Based Waiver, Instructions, Technical Guide and Review Criteria, CMS (November 2006), Appendix B, Participant Access and Eligibility, Affidavit of Katherine G. Georges, Ex. 1 at 3-4. CMS has explicitly noted that "[a] state may find it necessary to reduce the maximum number of participants because legislative appropriations are insufficient to support the number of persons specified in the approved waiver," and requires states to obtain its approval for such changes. Id. CMS has approved Oregon's application to modify its waiver program in a manner that heightened the eligibility requirements for HCBS waiver services, and denied long-term care to some Medicaid beneficiaries who had formerly received that care.

Material in the record before the court establishes that, like CMS, HHS also interprets the Medicaid Act as allowing states to establish their own criteria for determining

FINDINGS & RECOMMENDATION - 12

eligibility for nursing facility services, and as not requiring states to provide this care to all Medicaid beneficiaries who need it. See State Residential Care and Assisted Living Policy (2004), United States Department of Health and Human Services, hhtp://aspe.hhs.gov/daltcp/reports/04alcom1.htm, Georges Aff., Ex. 2 at 2.[4] An HHS report notes that states use a variety of criteria for determining whether an individual qualifies for admission to a nursing home, and accordingly qualifies for receipt of services under a Medicaid HCBS waiver program.[5]

HHS has noted that each state adopts its own level of care eligibility threshold for nursing home care, that "[s]tates fall on a continuum from low to high thresholds for nursing home admission," and that individuals who meet the criteria for nursing home care in one state may not meet the criteria in another state. Id. HHS has observed that, while some states only require that an individual need assistance with two ADLs in order to be eligible, "others may require that a person be totally dependent in 3 or more ADLs." Id. HHS has further observed that, while some

---

[4] Plaintiffs contend that this exhibit cannot be relied upon because it constitutes inadmissible hearsay. I disagree. This report was prepared for the Office of Disability, Aging, and Long-Term Care Policy (DALTCP) of the U.S. Department of Health and Human Services (HHS). DALTCP's responsibilities include development and coordination of HHS policies and programs that support the health and long term care needs of adults and older persons with disabilities. http://aspe.hhs.gov/daltcp/reports. Under Fed. R. Evid. 803(8), reports of public agencies setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report" are subject to a hearsay exception. The DALTCP report in question appears to fall within this hearsay exception.

[5] These criteria include (1) medical conditions or needs; (2) a combination of medical needs and functional impairments; (3) functional impairments alone; and (4) scores from an assessment. Of forty-five states surveyed in an HHS report in 2004, two states relied exclusively on medical criteria, thirteen states used assessment of medical and functional needs, eight states used an assessment score based on a combination of medical and functional needs, and twenty-two based eligibility on activities of daily living (ADL) thresholds. Id. Oregon is one of the states that relies on assessment of ADLs to determine whether an individual qualifies for nursing home care or for HCBS waiver services.

FINDINGS & RECOMMENDATION - 13

states require that individuals have a combination of medical conditions and needs and functional limitations in order to be eligible for nursing care services, "others require only certain medical needs." Id. The agency has noted that, because CMS gives states "considerable flexibility" in determining criteria for nursing home level care, "states may choose to make that criteria more stringent in response to budget deficits, as Oregon has recently done." Id. at 3. The agency specifically observed, without criticism, that if a state raises its threshold criteria from two ADL impairments to three ADL impairments, a person with two impairments "will no longer be eligible for Medicaid coverage for nursing home or community based waiver services." Id.

Just such a change in criteria gave rise to the present action: Oregon raised its minimum nursing home care criteria, limiting HCBS waiver services to individuals assessed at levels one through thirteen. Individuals assessed in levels fourteen through seventeen, who were formerly eligible to receive Medicaid coverage for nursing home or HCBS waiver services, are no longer eligible for such care.

The parties have cited, and I have found, only one decision that directly addresses whether the Medicaid Act creates a federal eligibility requiring states to provide nursing facility services to all Medicaid beneficiaries who need that care, and whether states can alter their eligibility requirements in response to budgetary difficulties. In Kerr v. Holsinger, 2004 U.S. Dist. LEXIS 7804 (D. Ky. 2004), Medicaid recipients challenged a change in Kentucky's eligibility requirements which, in response to budgetary difficulties, reduced the number of individuals who were eligible for nursing home and HCBS waiver services. In granting the plaintiffs' motion for preliminary injunctive relief, the Kerr court held that the plaintiffs would likely prevail on their argument that the state was required to provide nursing facility care and

HCBS waiver services under 42 U.S.C. §§ 1396a and 1396d, and that the state could not lawfully alter eligibility for services based upon its alleged budgetary difficulties. Id. at *9.

The Kerr decision was not a final decision on the merits, and I find no indication that it was reviewed on appeal. The decision is not binding on this court, and I do not find it persuasive. I find no indication in the Kerr decision that the court recognized or was aware that individual states routinely set Medicaid eligibility criteria for nursing home and HCBS waiver services, or that the eligibility requirements for such services vary widely throughout the United States. I likewise find no indication that the Kerr court was aware that HHS does not consider variations in assessment methods and eligibility for services throughout the various states as violations of the Medicaid Act, or that CMS does not interpret the Medicaid Act as requiring a uniform, national standard for determining eligibility for services. In the absence of any discussion of CMS's interpretation of the Act or its role in evaluating state applications to modify HCBS waiver programs, the Kerr decision does not provide a useful analysis of the issues before the court here. In addition, I note that the Kerr court further concluded that plaintiffs had a private right of action under 42 U.S.C. § 1983 to enforce § 1396a(a)(17), a conclusion that is contrary to the Ninth Circuit's earlier decision in the present action, which affirmed this court's conclusion that such a private right of action did not exist.

I also note that several of the decisions on which the Kerr court relied are not relevant to the question presented in the present action. See Alabama Nursing Home Association v. Harris, 617 F.2d 388, 395 (5th Cir. 1980); Arkansas Medical Society v. Reynolds, 6 F.3d 519, 522 (9th Cir. 1993); Thomas v. Johnston, 557 F. Supp. 879, 914 (D. Tex. 1983). In those decisions, courts addressed the factors that are relevant in determining reimbursement rates for health care

providers that furnish services to Medicaid recipients, an issue that is not related to the question presented here.

Based upon a careful review of the relevant statutes, the record before the court, and the parties' arguments, I conclude that 42 U.S.C. §§ 1396a(a)(10) and 1396d(a)(4)(A) do not require states to provide nursing home or HCBS waiver services to every Medicaid beneficiary who needs such services. These statutes likewise do not prohibit states from modifying eligibility standards to reduce the number of beneficiaries receiving nursing care or HCBS waiver services, as did Oregon, in response to budget restrictions. Instead, read in the context of other provisions of the Medicaid Act, these statutes define the services for which the federal government will reimburse states that participate in the Medicaid program, and allow each state to set its own criteria for determining which Medicaid beneficiaries qualify for nursing home or HCBS waiver services.

As noted above, statutory provisions must be read in context, with regard for their place in a statutory scheme, FDA, 529 U.S. at 133, and unambiguous statutory language is controlling. Leavitt, 500 F.3d at 1030. If a statute is "uncertain or ambiguous" as to the issue in question, courts defer to a "permissible construction" by the agency that is charged with execution of the statute. Id.

Here, in the larger context of the Medicaid Act in which they appear, the statutes upon which plaintiffs rely allow states to establish criteria for long-term care that do not provide nursing facility services care to every Medicaid beneficiary who needs it. However, even if these statutes were considered "uncertain or ambiguous" as to that issue, the interpretation of HHS and CMS, which do not construe the statutes as establishing a federal eligibility standard, is a "permissible construction."

FINDINGS & RECOMMENDATION - 16

For the foregoing reasons, I recommend granting defendants' motion for summary judgment.

## CONCLUSION

Defendants' motion for summary judgment (#157) should be GRANTED, and a judgment should be entered dismissing this action with prejudice.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due April 18, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 2nd day of April, 2008.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge